69

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ILLINOIS,

## EASTERN DIVISION

| | |
|---|---|
| **MOHAMMAD WAQAS KHAN** | **1:17-cv-03682** |
| Plaintiff, | **Judge Charles R. Norgle, Sr** |
| | **Magistrate Judge Maria Valdez** |
| v. | ) |
| | ) JURY TRIAL DEMAND |
| **JAMES BRIEN COMEY, Former Director of the Federal** | ) |
| **Bureau of Investigation; ROBERT MUELLER, Former** | ) |
| **Director of the Federal Bureau of Investigation; LORETTA** | ) |
| **LYNCH, Former Attorney General for the United States;** | ) |
| **ERIC HOLDER, Former Attorney General for the United** | ) |
| **States; ZACHARY T. FARDON, Former United States** | ) |
| **Attorney for the Northern Division of Illinois; KELLY** | ) |
| **GUZMAN, Assistant Attorney for the United States;** | ) |
| **THOMAS E. BRANDON, Acting Director of the Alcohol,** | ) |
| **Tobacco, Firearms and Explosives; TIMOTHY WALTHER,** | ) |
| **Special Agent for the Federal Bureau of Investigation;** | ) |
| **MICHAEL T. MASON, Magistrate Judge for the Northern** | ) |
| **District of Illinois; JEFFREY COLE, Magistrate Judge for the** | ) |
| **Northern District of Illinois; FBI Agent TIMOTHY** | ) |
| **WALTHER; FBI Agent CURTIS GONZALES; FBI Agent** | ) |
| **RANJIT TAKHAR; FBI Agent ATSATSANG TENZIN;** | ) |
| **FBI Agent JODY STANLEY; FBI Agent MICHAEL** | ) |
| **VAHIDTARI; FBI Agent MICHELE L. CALLIGHAN;** | ) |
| **FBI Supervisory Special Agent THOMAS WILSON; County** | ) |
| **Of DuPage Detective PAUL O'NEIL; County of DuPage** | ) |

RECEIVED

MAY 16 2017

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

1

**Sergeant MURAKAMI DOE; County of DuPage Detective** )

**DELELIO DOE; JOHN DOES and JANE DOES.** )

Defendants. )

## COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

### JURISDICTION AND VENUE

1. This action arises under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

2. Jurisdiction is conferred on this Court by Title 28, U.S.C. Section 1331.

3. This Court has personal jurisdiction over the Defendants named herein due to their violations of the Plaintiff's First, Second, Fourth, Fifth, Sixth, Eight, Tenth, and Fourteenth Amendment rights as secured by the Constitution of the United States.

4. The Defendants also violated the Plaintiff's rights as secured by numerous federal statutes enacted by the United States Congress, including federal laws against conspiracy to injure or intimidate any citizen for the exercise of their federal rights, Title 18 U.S. Code Section 241; unlawful access to stored communications, Title 18 U.S.C. Section 2703 (a); perjury, Title 18 U.S.C. Section 1621; suborned perjury, Title 18 U.S.C. Section 1622; false declarations before a Grand Jury or Court, Title 18 U.S.C. Section 1623; corruptly influencing or injuring officer or Juror, Title U.S.C. Section 1503; destruction of evidence, Title 18 U.S.C. Section 1519; unlawful removal and destruction of records, Title 44 U.S.C. Chap. 31, Section 3106; tampering with a witness, victim, or informant through misleading information; solicitation to commit a crime of violence, 18 U.S.C. Section 373; tampering with a witness, victim, or informant, Title U.S.C. Section 1512 (b)(c); the falsification, concealment, and coverup of material facts, Title 18 U.S.C.

2

Section 1001; conspiring to commit an offense or to defraud the United States, 18 U.S.C. Section 371; and unlawful pretrial detention, Title 18 U.S.C. Section 3142.

5. These violations were carried out against the Plaintiff in the County of DuPage, in the city of Chicago, and in the State of Illinois.

6. The venue is proper in the Northern District of Illinois, Eastern Division, pursuant to Title 28, U.S. Code Section 1391.

7. The Defendants named herein are sued in their personal capacity.

**Parties to the Action**

8. Mohammad Waqas Khan, pro se Plaintiff, is a citizen of the United States of America. The Plaintiff resides at 2N525 Pleasant Ave., Glen Ellyn, IL, 60137; in the County of DuPage.

9. Defendant James Brien Comey is the former Director of the Federal Bureau of Investigation (FBI), an agency of the United States of America, and acted within the scope of federal employment and under color of federal law at the time of the incident.

10. Defendant Robert Mueller is the former Director of the Federal Bureau of Investigation (FBI), and masterminded the implementation of illegal and unconstitutional investigative policies and policing guidelines under color of federal authority for 12 years. Mr. Mueller was head of the FBI from September 4, 2001, until September 4, 2013.

11. Defendant Loretta Lynch is the former Attorney General at the Department of Justice (DoJ), an agency of the United States, and acted within the scope of federal employment and under color of federal law at the time of the incident.

12. Defendant Eric Holder is the former Attorney General at the Department of Justice, and acted within the scope of federal employment and under color of federal law around the time of the incident.

13. Defendant Zachary T. Fardon is the former United States Attorney for the Northern District of Illinois, and was employed by the Department of Justice. Defendant Fardon acted under color of federal authority at the time of the sham prosecution against the Plaintiff.

14. Defendant Kelly Guzman is the Assistant Attorney for the United States in the Northern District of Illinois. Defendant Guzman acted under color of federal authority.

15. Defendant Michael T. Mason is a Magistrate Judge in the Northern District of Illinois. Defendant Mason forfeited his absolute immunity by acting outside of federal jurisdiction, which lacks plenary policing powers over intrastate affairs with no direct monetary connection, and was responsible for signing the defective complaint and arrest warrant issued against the Plaintiff on May 15, 2015. Defendant Mason acted under the color of federal authority.

16. Defendant Jeffery Cole is a Magistrate Judge in the Northern District of Illinois. Defendant Cole has forfeited his absolute immunity by acting out of his jurisdictional bounds, and was responsible for the illegal pretrial incarceration of the Plaintiff against the recommendation of pretrial services. Defendant Cole acted under the color of federal authority.

17. Defendant Thomas E. Brandon is the Acting Director of the Alcohol, Tobacco, Firearms and Explosives (ATF). Defendant Brandon acted under color of federal authority at the time of the alleged incidents.

4

18. Defendant Timothy Walther is a special agent with the FBI, and has been employed since 2008. Defendant Walther filed a sham complaint against the Plaintiff on May 15, 2015, after illegally snapping pictures of the Plaintiff's Facebook account using his cellphone, in violation of the Stored Communications Act. Defendant Walther maintains a fake Facebook account ("non-attributable) on Facebook which was illegally used by the FBI for the criminal investigation against the Plaintiff. Defendant Walther acted without a warrant supported by probable cause, and under color of federal authority.

19. Defendant Curtis Gonzales is a special agent with the FBI. Defendant Gonzales participated in the false arrest and seizure of the Plaintiff and his intellectual property. Defendant Gonzales acted under color of federal authority.

20. Defendant Ranjit Takhar is a special agent with the FBI. Defendant Takhar solicited the false arrest of the Plaintiff by Defendant Patrick O'Neil, who is employed as a Detective for the DuPage County Sheriff's Office. Defendant Ranjit Takhar acted under color of federal authority, without warrants and without probable cause.

21. Defendant Atsatsang Tenzin is a special agent with the FBI. Defendant Tenzin aided participated in Defendant Takhar's unlawful solicitations, which resulted in the warrantless arrest of the Plaintiff. Defendant Tenzin acted under color of federal authority.

22. Defendant Jodey Stanley is a special Agent with the FBI. Defendant Jodey was involved in the false arrest of the Plaintiff, and participated in the illegal activities detailed herein. Defendant Stanley acted under color of federal authority.

23. Defendant Michael Vahidtari is a special agent with the FBI. Defendant Vahidtari participated in the false arrest of the Defendant, along with other illegal activities detailed herein. Defendant Vahidtari acted under color of federal authority.

24. Defendant Michele L. Callighan is a special agent with the FBI. Defendant Callighan participated in the false arrest of the Defendant, along with other illegal activities detailed herein. Defendant Callighan acted under color of federal authority.

25. Defendant Thomas Wilson is a supervisory special agent with the FBI. Defendant Wilson authorized Defendant Walther's illegal surveillance of the Plaintiff. Defendant Wilson participated in the illegal activities detailed herein, and acted under color of federal authority.

26. Defendant Patrick O'Neil is employed by the County of DuPage, as a Detective for the Sheriff's Office. Defendant O'Neil illegally stopped and arrested the Plaintiff under the directions of the FBI. Defendant O'Neil's initial stop was conducted under the color and direction of federal authorities, while his arrest of the Plaintiff was done under color of state law. Defendant O'Neil is dually liable for his wanton and illegal actions, and is currently a Defendant in a separate Section 1983 lawsuit filed by the Plaintiff.

27. Defendant Murakami DOE is employed by the County of DuPage, as a Sergeant for the Sheriff's Office. Defendant Murakami accompanied Defendant O'Neil knowing the federal nature of the arrest in advance. Defendant Murakami is dually liable for his illegal participation in the Plaintiff's false stop and arrest. Defendant Murakami is currently a defendant in a separate Section 1983 lawsuit filed by the Plaintiff.

28. Defendant Delelio DOE is employed by the County of DuPage, as a Detective for the Sheriff's Office. Defendant Delelio accompanied Defendant O'Neil knowing the federal

6

nature of the arrest in advance. Defendant Delelio is dually liable for his illegal participation in the Plaintiff's false stop and arrest. Defendant Delelio is currently a Defendant in a separate Section 1983 lawsuit filed by the Plaintiff.

### Introduction

29. Plaintiff Mohammad W. Khan was falsely arrested by DuPage County Detective Defendant Patrick O'Neil, working under color and direction of federal authority.

30. There were no warrants against the Plaintiff at the time of the arrest, no probable cause, and no reasonable suspicion.

31. Prior to his illegal stop and arrest, the Plaintiff had not been charged with any offense, had not committed a traffic violation, and was not observed engaged in suspicious behavior.

32. The Plaintiff's vehicle was impounded, and charged by the state for unlawful use of firearms.

33. The Honorable Judge Bruce R. Kelsey of the 18th Judicial Circuit held that the arrest was unlawful and dismissed the charge against the Plaintiff without appeal in July of 2016. See **Exhibit 1** for court order.

34. A month prior to the dismissal, on June 22, 2016, Judge Kelsey had granted the Plaintiff's motion to quash arrest and suppress evidence. See **Exhibit 2**.

35. However, on May 15, 2015, using the fruits of the illegal arrest, FBI Special Agent Defendant Timothy Walther filed a sham complaint against the Plaintiff, who was falsely accused of transmitting threatening communications over interstate commerce under Title 18 Section 875 (c).

 a. As of May 16, 2017, the government is not aware of any individual who claims to have been threatened by the Plaintiff.

 b. The government is not aware of any individual who claims to have received threatening messages from the Plaintiff.

 c. And the government is not aware of any individual who claims to have even seen the Plaintiff's Facebook posts.

36. Defendant Michael T. Mason signed the complaint and issued an arrest warrant on May 15, 2015.

 a. Plaintiff Khan's Facebook posts did not have any monetary value, and did not in any way directly or substantially impede the flow of interstate commerce.

 b. Defendant Mason violated the Commerce Clause of the Constitution, as well as the Tenth Amendment which limits the powers of the federal government.

 c. Defendant Mason violated the long-established limits on federal jurisdiction over intrastate activity with no direct or substantial impact on interstate commerce.

 d. The federal government does not have a plenary policing power is an established pillar of constitutional law in the United States.

37. The Plaintiff remained in state custody until July 10, 2015, where he was held in isolation, and officially arrested by the federal government.

38. On July 10, 2015, Plaintiff Khan made his initial appearance before Judge Jeffrey Cole.

39. On July 20, 2015, Defendant Cole unlawfully denied Plaintiff Khan pretrial release.

40. On November 3, 2015, Plaintiff Khan was released into the custody of his parents by the Honorable Judge Joan Lefkow.

41. The Plaintiff is currently under house arrest in the custody of his parents, while Judge Roberty Blakey considers his motions to suppress evidence and dismiss the indictment.

## Background to the Arrest

42. On May 13, 2015, at approximately 2:55 p.m., five FBI agents working for the FBI's Chicago Division set-up surveillance outside the residence of Plaintiff Khan, based on their warrantless search and seizure of the Plaintiff's intellectual property posted on his Facebook account.

43. The FBI agents at the Chicago Division had been "monitoring" the Plaintiff's Facebook account using a fake, "non-attributable" account.[1]

44. The agents snapped pictures of the Plaintiff's intellectual property posted on the Plaintiff's personal Facebook "wall," without a warrant, without probable cause, and without reasonable suspicion of any offense or wrongdoing by the Plaintiff.

45. Facebook is a privately-owned corporation which maintains a social-media website, and specifically requires a warrant supported by probable cause for law enforcement authorities to obtain content of its members.

46. Facebook's guidelines for law enforcement authorities states the following (see **Exhibit 3**):

> "A search warrant issued under the procedures described in the Federal Rules of Criminal Procedure or equivalent state warrant procedures upon a showing of probable cause is required to compel the disclosure of the stored contents of any account, which may include messages, photos, videos, timeline posts, and location information."

---

[1] These are fake accounts set up by the FBI under fake names and fake identities to target specific individuals for criminal investigation, without a warrant supported by probable cause.

47. Facebook operates under the Stored Communications Act, 18 U.S.C. Sections 2701-2712.

48. 18 U.S.C. Section 2703 (a) of the Stored Communications Act specifically requires that the government obtain a warrant supported by probable cause to access all electronic content stored for 180 days or less.

49. The government has falsely asserted that a warrant based on probable cause is not required for seizing Facebook content, contrary to Facebook's Guidelines for Law Enforcement Authorities and in violation of 18 U.S.C. Section 2703 (a).

50. The government claims that Facebook is an "open-source website" because its services are available to its members.

51. Defendant Walther has also stated his belief that federal agents can operate fake Facebook accounts ("non-attributable") for investigative purposes of unsuspecting members without the inconvenience of obtaining search warrants.

52. However, Defendant Timothy Walther has admitted on the record, during his direct examination by the Plaintiff on April 12, 2017, that access to any Facebook service by any individual user requires individuals to sign-up and log-in with Facebook.

53. Individuals who are not signed up and logged in with Facebook cannot access any Facebook member's account or personal content, including photos, videos, and postings.

54. Based on their erroneous assumptions, FBI agents illegally snapped pictures of the Plaintiff's Facebook account from May 7, 2015, to May 14, 2015, and seized over 30 pages of the Plaintiff's intellectual property to prosecute the Plaintiff.

55. The Plaintiff was not aware of the FBI's baseless investigation against him, and never gave his consent to such activities.

56. The Plaintiff had a single, inactive user "friend" on his account who, upon questioning by the FBI, informed the agents that he had never seen the Plaintiff's rap lyrics and didn't feel threatened by them.

57. The Plaintiff regularly posted rap songs on his Facebook account, composing and editing rap lyrics, along with other content, but never posted his Facebook content on any other individual's Facebook account.

58. Plaintiff Khan is the Managing Director of *Kush Kingdom Records Label, L.L.C.*, which is responsible for producing, distributing, and marketing rap videos and songs.[2]

The FBI's Fake "Leads"

59. The FBI began its warrantless search and seizure of the Plaintiff's Facebook content based on a "lead" which it allegedly received pertaining to the Plaintiff's Facebook account.

60. This "lead" was allegedly sent from the FBI's Springfield Division in Illinois, in the form of an electronic email.

61. The "lead" was "documented" and "memorialized" to Defendant Timothy Walther, who admitted to never having inspected the "lead" for himself.

62. On April 12, 2017, upon his direct examination by the Plaintiff, Defendant Walther couldn't recall who sent the "lead," what it contained, when it was sent, or the identity of the individual who "memorialized" the lead to him.

63. Defendant Walther didn't have the "lead" and couldn't identify any individual who would.

---

2. The record label is currently inactive due to the Plaintiff's house arrest. See **EXHIBIT 8** for the Secretary of State's Certificate of Good Standing.

64. Defendant Walther was however able to recall that the "lead" by the Springfield Division was itself based on another electronic "lead" allegedly sent to it from the FBI's headquarters in Washington D.C.:

> "Q. So this email was documented? The contents of this email were documented?
>
> A. Correct.
>
> Q. But you never saw those?
>
> A. Yes.
>
> Q. Do you know who did?
>
> A. Probably very - - a very large number of individuals in the FBI had seen the lead that was generated by the FBI headquarters personnel.
>
> Q. Could you – and you would be able to recall with specificity the identity of that person before the Court today; is that correct?
>
> A. The identity of which person?
>
> Q. The person who read the documented part of the email in the FBI.
>
> A. Sitting here right now, I could not tell you who wrote and drafted that lead that came out of headquarters off the top of my head today.
>
> Q. Do you recall when it was sent, referring to the email?
>
> MS. GUZMAN: Objection, foundation. Sent to whom?
>
> MR. KHAN: To the FBI.
>
> THE COURT: If you know.
>
> THE WITNESS: Off the top of my head, I cannot recall the exact date it was forwarded to the FBI." (**Exhibit 4, p. 21-22**)

65. Defendant Walther admitted to never having read this original "lead" from the FBI headquarters either; couldn't recall when it was sent; who sent it; or what information it specifically contained.

66. Defendant Walther couldn't recall the identity of any individual at the FBI or otherwise who would know anything specific about this original "lead" from FBI headquarters, but he did admit that it didn't contain any specific allegations of wrongdoing by the Plaintiff.

67. Defendant Walther is not in possession of the lead.

68. Upon inquiry about this "lead" upon which the criminal investigations and prosecution are predicated, the Plaintiff was informed by Assistant Attorney Kelly Guzman that the "leads" were "irrelevant" to the case and not subject for discovery:

> "As you know, absent an order of the Court, we have taken the position that such information is not relevant or subject to discovery."     (See **Exhibit 9**)

### The FBI's Fake "Anonymous Tip"

69. Furthermore, Defendant Walther has falsely claimed that the leads were themselves based on an "anonymous tip" which was allegedly sent to the Illinois State Police FOID Department, who forwarded it to the FBI's headquarters.

70. On July 23, 2015, in reply to a question from a Grand Juror about how the FBI was made aware of the Plaintiff's Facebook account, (Defendant Walther's Grand Jury testimony has been submitted as **Exhibit 6**), Defendant Walther made the following unsubstantiated and misleading claim:

> "Q. How did it come to the attention of the FBI?
>
> A.  The FBI learned of this as a result of an email that came into the Illinois State Police FOID Department which was then forwarded to the FBI." (**Exhibit 6, at p. 16**)

71. Upon questioning by the Plaintiff regarding this "anonymous tip", Defendant Walther couldn't recall when this anonymous tip was allegedly sent; what it contained; or what its "basis of knowledge," "indicia of reliability" or "veracity" were.

72. Defendant Walther admitted to never having inspected the anonymous tip himself;
couldn't recall who had; doesn't have it in his possession; and couldn't recall the identity
of any individual who would.

73. Defendant Walther made the following admissions during his direct examination on April
12, 2017:

> "Q. Have you ever read – have you ever personally read this
> email?
> MS. GUZMAN: Objection, relevance.
> THE COURT: Overruled.
> THE WITNESS: Now, which email are you specifically referring
> to now?
> MR. KHAN: The email which was allegedly forwarded to the FBI
> by the Illinois State Police FOID Department which made the FBI
> aware of the defendant's Facebook activity.
> THE WITNESS: I have not physically examined the actual email. I
> simply read and digested the information that was then
> documented by the FBI and forwarded out to the field divisions for
> investigation.
> Q. So you never read this email?
> A. No.
> Q. Did any other FBI agent with whom you were in contact ever
> read this email?
> MS. GUZMAN: Objection, speculation.
> THE COURT: If you know.
> THE WITNESS: That I do not know.
> Q. Did you ever inquire from other FBI agents if they had read this
> email?
> A. I would say that no, I have never inquired of other FBI agents as
> to the reading of the specific email as, like I said, we operated
> under the lead that was drafted based upon this email by FBI
> personnel at the FBI headquarters in Washington D.C.
> Q. So you would not be able to recall the contents of this email,
> correct?
>
> A. Specifically right now, no, I could not." (**Exhibit 4, p. 20-21**)

74. The so-called "leads" and "anonymous tip" upon which they are allegedly based were
never mentioned in the search warrant, complaint, or the indictment.

75. On October 11, 2016, Assistant Attorney Kelly Guzman also admitted on the record that she didn't know anything about the anonymous tip, has never inspected it, doesn't have it in her possession, and she couldn't state who would:

> "THE DEFENDANT: Your Honor, Timothy Walther claims that there was some sort of an email sent to the police, some police department, which asked for them to look into my Facebook posts.
>
> And on that basis, apparently allegedly this investigation began. I need to verify what was said in that email and who said it so I can cross-examine them.
>
> THE COURT: I know the reference to the email in the grand jury transcript. Do you know what email that is?
>
> MS. GUZMAN: No, judge. I don't have it, and I don't know if the Illinois State Police still does. I haven't inquired. And our position would be that it's not relevant and shouldn't be produced." **(Exhibit 7, p. 21-22)**

<u>The FBI Illegally Arrests Plaintiff Khan</u>

76. On May 13, at approximately 7:15 p.m., FBI agents observed the Plaintiff get into his vehicle from his residence and drive off to work.

77. The FBI learned that the Plaintiff was temporarily employed with Uber as they interviewed the Plaintiff's passengers later that night.

78. Without seeking a search or arrest warrant against the Plaintiff, whom the FBI claims presented an immediate threat to the safety of the community, and without immediately stopping and arresting the Plaintiff, the FBI followed the Plaintiff around the city for five hours.

79. At approximately 12 a.m., the FBI agents lost sight of the Plaintiff's vehicle until the Plaintiff returned home at approximately 1 a.m.

80. During this same evening on May 13, 2015, while the Plaintiff was being followed and his residence was under surveillance by other FBI agents, but without seeking a warrant, Defendant Walther along with an unidentified number of agents drove down to Villa Park and had a conversation with a family friend of the Plaintiff identified as "Individual A".

81. They showed "Individual A" the 30 pages of Facebook content they had seized from the Plaintiff's Facebook account.

82. "Individual A" informed the FBI agents that he had never observed the Plaintiff make any threats to any individual; was not on the Plaintiff's Facebook account; had never seen the posts; and didn't personally feel threatened by the posts.

83. At approximate 1 a.m., May 14, 2015, the FBI agents stationed outside the Plaintiff's residence observed the Plaintiff's vehicle driving back towards his residence, but at no point did they try to stop and arrest the Plaintiff.

84. The next afternoon, without seeking a warrant for the Plaintiff, at approximate 3 to 4 p.m., five FBI agents drove down to the County of DuPage, IL, which is "40 miles away" from Chicago according to Defendant Walther, and had an unrecorded conversation with Detective Patrick O'Neil, employed by the County of DuPage Sheriff's Office.

85. The FBI agents requested "assistance" with the Plaintiff's arrest until they can figure out what to do with the Plaintiff, to which Defendant Patrick O'Neil gave his approval.

86. On May 14, 2015, at approximately 5 p.m., Defendant Ranjit Takhar and Defendant Atsatsang Tenzin, along with other FBI agents, observed the Plaintiff get into his vehicle and drive off to an unknown location.

87. Though no FBI agent ever saw the Plaintiff put a firearm in his vehicle, the FBI agents claim that the Plaintiff presented an immediate threat and intended to "shoot and kill people".

88. Rather than immediately stop and arrest the Plaintiff, or even follow the Plaintiff in their vehicles, Defendant Ranjit Takhar, along with other FBI agents present on the scene, called Defendant Patrick O'Neil and informed him that they had just observed the Plaintiff get into his vehicle and drive off to an unknown location.

89. The Defendants requested that Defendant O'Neil stop and arrest the Plaintiff as the Plaintiff posed an immediate threat to public security.

90. Defendant O'Neil arrived between 20 and 25 minutes later and parked his vehicle approximately two blocks from the Plaintiff's residence in Glen Ellyn, IL.

91. Defendant O'Neil was joined by Defendant Murakami and Defendant Delelio, as they waited eagerly for the Plaintiff's to return.

92. On April 12, 2017, when asked by Plaintiff Khan why, if the FBI truly believed the Plaintiff was an immediate threat to public safety didn't stop and arrest the Plaintiff itself, Defendant Ranjit Takhar admitted the following:

> "Q. You didn't answer my question. I asked you why the FBI who
> were present on the scene did not arrest the Defendant when he left
> the house. You didn't answer the question.
> MS. GILKERSON: Objection, relevance.
> THE COURT: He's asking a new question. Why didn't you – why
> didn't the FBI arrest him as soon as he left the house?
> Is that your question?
> MR. KHAN: It's rephrasing the same question I asked which she
> didn't answer.
> THE COURT: No, it's not.
> But go ahead and answer that question if you know the answer.
> THE WITNESS: Because we didn't have an arrest warrant for you,
> sir. You're –
> MR. KHAN: Yes. Keep going. I'm sorry.

17

THE WITNESS: You're asking why we didn't arrest you. Again, I'm telling you we didn't have an arrest warrant on you.
BY MR. KHAN:
Q. Thank you. And did the DuPage County Sheriff's Department have an arrest warrant or a search warrant at that time?
A. No.
MR. KHAN: That will be all, your Honor." (**Exhibit 4, at p. 103-104**)

93. At approximately 5:51 p.m., Defendant O'Neil observed Plaintiff Khan's vehicle driving eastbound on Armitage Avenue in the direction of his residence.

94. Defendant O'Neil turned on his flashers and stopped the Plaintiff's vehicle as it turned into Pleasant Ave., less than half a block from the Plaintiff's residence.

95. Defendant O'Neil did not have a warrant to search or arrest the Plaintiff, and never observed the Plaintiff make any traffic violations.

96. Defendant O'Neil did not observe the Plaintiff engages in suspicious behavior.

97. And Defendant O'Neil was aware at the time of the stop that there were no federal warrants against the Plaintiff, and that the federal agents were present on the scene.

98. Plaintiff Khan had not been charged with any offense prior to the stop, and did not have a history of crime or violence.

99. As Defendant O'Neil approached the vehicle he did not observe any contraband or firearms in plain-sight.

100. On June 22, 2016, Defendant O'Neil made the following admissions during his direct examination in the 18th Judicial Circuit Court of DuPage County (submitted as **Exhibit 5**):

"Q. At that point in time, did you have an arrest warrant for Mr. Khan? (pg. 11)
A. No. (pg. 11)
Q. Did you have a search warrant for Mr. Khan's vehicle? (pg. 11)

18

A.  No. (pg. 11)

Q.  Prior to stopping Mr. Khan's vehicle, you did not observe Mr. Khan's vehicle make any traffic violations; correct? (pg. 12)

A.  No. (pg. 12)

Q.  You did not see, from the time you observed Mr. Khan's vehicle until you stopped the vehicle, you did not see that car used in the commission of any crimes; correct? (pg. 12)

A.  Correct. (pg. 12)

Q.  When you approached the vehicle, you did not see any illegal contraband in plain view in the vehicle; is that correct? (pg. 12)

A.  That's correct. (pg. 12)

Q.  And at that point, you were not aware of any federal warrant for Mr. Khan; is that correct? (pg. 13)

A.  That is correct. (pg. 13)

Q.  So, there was no federal warrant for his arrest, no state warrant for his arrest; is that correct? (pg. 13)

A.  That's correct. (pg. 13)

Q.  You did not observe him commit any crimes, either federal or state, prior to stopping his vehicle? (pg. 13)

A.  Correct. (pg. 13)

**Q.  You simply stopped his vehicle because the F.B.I. said, hey, we'd like you to stop this guy for us and detain him? (pg. 13)**

**A.  Yes. (pg. 13)**

Q.  Okay. When you asked Mr. Khan to exit the vehicle, did he do that? (pg. 14)

A.  He did. (pg. 14)

Q.  Okay. At the back of the vehicle, did you tell – once he got to the back of the vehicle, he wasn't free to leave; is that correct? (pg. 15)

A.  I advised him that he was being detained. The F.B.I. wanted to speak with him. (pg. 15)

Q.  Did you – once you got Mr. Khan to the back of the car – and you specifically, I guess, used the words that he was being detained because the F.B.I. wanted to talk to him; is that correct? (pg. 15)

A.  That is correct. (pg. 16)

19

Q.    At this point in time, did you tell Mr. Khan what are commonly referred to as his Miranda warnings? (pg. 16)

A.    No. (pg. 16)

Q.    Did -- (pg. 16)

THE COURT:        I'm sorry. Say it again, please. (pg. 16)

THE WITNESS:    No. (pg. 16)

THE COURT: Okay. (pg. 16)

BY MR. KENDALL (Defense Attorney):

Q.    At any time while you were at the scene of the traffic stop, did you give Mr. Khan his Miranda warnings? (pg. 16)

A.    No. (pg. 16)

Q.    Did you ever ask – well, strike that.

Did you subsequently search – did you have a conversation with Mr. Khan at the back of his vehicle? (pg. 16)

A.  I did. (pg. 16)

Q.    After that, did you search his vehicle? (pg. 16)

A.    After the conversation? (pg. 16)

Q.    Yes. (pg. 16)

A.    Yes. (pg. 16)

Q.    And at no time did Mr. Khan consent to a search of that vehicle; is that correct? (pg. 16-    17)

A.    Correct. (pg. 17)

Q.    And at no time did you obtain a search warrant for that vehicle prior to searching it; correct? (pg. 17)

A.    Correct. (pg. 17)

Q.    The F.B.I. were watching the house; correct? (pg. 32)

A.    Yeah. They were doing surveillance. (pg. 32)

Q.    Nobody saw Mr. Khan put a firearm in his vehicle prior to you stopping him that day; correct? (pg. 32)

A.    I have no knowledge – I never saw him. (pg. 33)

Q.      And nobody told you that they saw him put a gun in the car or there was a gun in his car;  correct? (pg. 33)

A.      Correct. (pg. 33)"

101.    Defendant O'Neil asked Plaintiff Khan to step outside his vehicle and to accompany him to the back, to which the Plaintiff complied.

102.    Defendant O'Neil informed the Plaintiff that he was being detained pursuant to an investigation by the FBI, and informed the FBI that the Plaintiff was in his custody.

103.    The FBI informed Defendant O'Neil to hold Plaintiff Khan until the FBI can figure out what they wanted to do with the Plaintiff.

104.    Without reading the Plaintiff his Miranda Rights, Defendant O'Neil began to aggressively question the Plaintiff about his legally owned firearms.

105.    Plaintiff Khan informed Defendant O'Neil that he did not have any weapons on his person.

106.    Defendant O'Neil "advised Mr. Khan that it sounded like he had a gun in his vehicle," and began to search the Plaintiff's vehicle without the Plaintiff's consent.

107.    Defendant O'Neil found Plaintiff Khan's legally owned firearm which he claims was in an unbroken state, and arrested the Plaintiff for unlawful use of firearms under color of Illinois law, 720 ILCS 5/24-1.

108.    On July 22, 2016, the Honorable Judge Bruce R. Kelsey of the 18th Judicial Circuit Court of DuPage County held the arrest to be illegal, and dismissed the charge. See **Exhibit 1** for court order dismissing the charge.

109.     Earlier that year, on June 22, 2016, the Honorable Judge Bruce R. Kelsey had granted the Plaintiff's motion to quash arrest and suppress evidence. See **Exhibit 2** for court order granting the Plaintiff's motion to quash arrest and suppress evidence.

110.     On May 15, 2015, a day after the Plaintiff's false arrest, Defendant Timothy Walther of the FBI filed a sham complaint against the Plaintiff accusing the Plaintiff of transmitting threatening communications over interstate commerce to injure the person of another, under 18 U.S. Code 875 Section (c).

### The Sham Complaint and Fraudulent Indictment

111.     As of May 15, 2015, the FBI was not aware of any individual who claims to have been personally threatened by the Plaintiff, directly or indirectly.

112.     The FBI is not aware of any individual who claims to have received threatening messages from the Plaintiff.

113.     And the FBI is not aware of any individual who claims to have independently seen the Plaintiff's Facebook account.

114.     On April 12, 2017, Defendant Timothy Walther- the complainant against the Plaintiff- admitted the following set of facts during his direct examination by the Plaintiff:

> ""Q. And the Defendant was not charged with any offense at the time Detective O'Neil arrested the Defendant; is that correct?
>
> A. Are you specifically referring to the state or the federal government charge?
>
> Q. Either way.
>
> A. I believe at the time of your arrest, the state did take you into custody for a firearms violation.
>
> Q. No. At the time of the stop, was there – was the defendant charged with any offense prior to—

22

A. Prior to the stop, no.

Q. Okay. And there was no individual at the time Detective O'Neil arrested the Defendant who claimed to have been threatened by the defendant; is that correct?

A. Individual by someone coming directly to us and saying, "I've been threatened"?

Q. Yes.

A. No.

Q. And there was no individual at the time Detective O'Neil arrested the defendant who claimed to have received threatening messages by the defendant; is that correct?

MS. GUZMAN: Objection to relevance and speculation.

MR. KHAN: Recipient, Your Honor, recipient of the threats.

THE COURT: You can answer, if you know.

THE WITNESS: Well, all I can say is the tip that came into the Illinois State Police, I don't know who that was. I don't know the nature of why they wanted to tip off. So I don't know if that person may have felt threatened by your message or not.

Other than that, I can't speak to anybody else that specifically came to me claiming personal effect from your messages.

Q. And at the time of the arrest, there were no individuals who independently saw the Defendant's Facebook comments; is that correct?

A. Could you restate that?

MS. GUZMAN: Objection, speculation.

THE COURT: The witness can answer if he understands the question.

THE WITNESS: Just restate it one more time, please.

BY MR. KHAN:

Q. Yes. And at the time Detective O'Neil arrested the Defendant, there were no individuals who independently saw the Defendant's Facebook account; is that correct?

A. That, I can't speak to. It was a publicly available Facebook page. And like I said before, there's billions of users on Facebook, so I don't know who may or may not have seen it." (**Exhibit 4, p. 42-44**).

23

115.     On April 13, 2017, Defendant Kelly Guzman, Assistant Attorney

for the United States, made the following admissions:

> "THE COURT: Are you aware of any evidence you intend to
> present at trial that would actually talk about a specific individual
> as a target?
> MS. GUZMAN: I don't know at this point, your Honor.
> THE COURT: As you stand right now, you can't say, you know,
> Joe Smith is going to be – is going to testify he received a threat?
> MS. GUZMAN: That's right.
> THE COURT: Okay.
> MS. GUZMAN: That's right." (**Exhibit 4, p. 324-325**)[3]

116.     Plaintiff Khan was arrested on May 14, 2015, and held in isolation at the

DuPage County jail until July 10, 2015.

117.     On July 10, 2015, the Plaintiff was produced before a federal Magistrate,

Defendant Jeffrey Cole, for the first time and informed of the charges against him.

118.     The Plaintiff was denied pretrial release by Defendant Jeffrey Cole on July 20,

2015, and held at the Metropolitan Correctional Center (MCC) until November 3, 2015.

119.     On November 3, 2015, the Honorable Judge Joan H. Lefkow granted the

Plaintiff's motion to be released on house arrest.

120.     Judge John Robert Blakey is currently considering the Plaintiff's motions to

suppress evidence and dismiss the indictment, along with the government's "response"

opposing dismissal of the case.

---

[3] Lines 24 and 25 on page 324; and lines 1-8 on page 325.

Defendants Violate Plaintiff's Civil Rights and Inflict Irreparable Emotional

Distress and Financial Harm Upon the Plaintiff

121. The Defendants named herein acted under color of federal authority and violated the Plaintiff's First, Second, Fourth, Fifth, Sixth, Eight, Tenth, and Fourteenth Amendment rights as secured by the Constitution of the United States.

122. The Defendants intentionally inflicted irreparable emotional distress and financial damage upon the Plaintiff.

123. The Plaintiff's reputation was maliciously maligned and his current and future financial prospects were irreparably sabotaged.

124. The Plaintiff has trouble sleeping and focusing on his daily activities.

125. The Plaintiff lives in constant fear of the government's illegal activities, and has developed a severe life-long psychosis as a result of his persecution by the Defendants.

126. On January 19, 2016, Plaintiff Khan was diagnosed with Delusional Disorder, Persecutory Type, by a Court appointed medical professional.

127. Later that year, between February and May of 2016, the Plaintiff was also diagnosed with Mixed Anxiety and Depressive Disorder; Maladjustment Disorder; and Attention Deficit Disorder.

128. The Plaintiff's intellectual property on his Facebook account was seized without a warrant, without his knowledge, and without his consent.

129. The Defendants also violated numerous Federal statutes and perverted the course of justice; committing perjury before the Grand Jury; and destroyed material evidence.

## CAUSES OF ACTION

## COUNT 1

## PLAINTIFF KHAN'S FIRST AMENDMENT RIGHT TO FREEDOM OF SPEECH AND EXPRESSION VIOLATED

130. Plaintiff Khan hereby adopts and incorporates all preceding paragraphs of this Complaint as if set forth herein again in full.

131. The actions of Defendants James Brien Comey, Robert Mueller, Loretta Lynch, Eric Holder, Zachary T. Fardon, Kelly Guzman, Thomas E. Brandon, Timothy Walther, Michael T. Mason, Jeffrey Cole, Timothy Walther, Curtis Gonzales, Ranjit Takhar, Atsatsang Tenzin, Jody Stanley, Michael Vahidtari, Michele L. Callighan, Thomas Wilson, Patrick O'Neil Sergeant Murakami, and Detective Delelio, violated Plaintiff Khan's inalienable right to freedom of speech and expression, as secured by the First Amendment of the United States Constitution.

132. As an aspiring artist and rap connoisseur, Plaintiff Khan regularly posted rap songs on his Facebook account along with composing and editing rap lyrics.

133. Plaintiff Khan is the Managing Director of *Kush Kingdom Records Label, L.L.C.,* and was engaged in clearly established Constitutional rights and lawful activities.

134. The Plaintiff did not have a criminal record prior to his illegal arrest, and was not affiliated with any foreign terrorist organization or foreign sovereign.

135. The Defendants named in this count directly participated in the formulation and implementation of illegal and unconstitutional policies and guidelines which cast a "chill" over the freedom of speech, and led to the Plaintiff civil rights violations.

136. The Plaintiff suffered extreme emotional distress and irreparable financial harm due to the Defendants illegal actions.

137. The compensatory, general, and punitive damages arising from these incidents are included in the relief sought below.

## Count 2

### Second Amendment: Plaintiff's Right to Bear Arms Violated

138. Plaintiff Khan hereby adopts and incorporates all preceding paragraphs of this Complaint as if set forth herein again in full.

139. The actions of Defendants James Brien Comey, Robert Mueller, Loretta Lynch, Eric Holder, Zachary T. Fardon, Kelly Guzman, Thomas E. Brandon, Timothy Walther, Michael T. Mason, Jeffrey Cole, Timothy Walther, Curtis Gonzales, Ranjit Takhar, Atsatsang Tenzin, Jody Stanley, Michael Vahidtari, Michele L. Callighan, Thomas Wilson, Patrick O'Neil Sergeant Murakami, and Detective Delelio, violated Plaintiff Khan's inalienable right to bear arms.

140. The Plaintiff legally owned and possessed three firearms which were seized without probable cause and in violation of his constitutional rights.

141. The Plaintiff had not threatened any individual and had not sent threatening messages to any individual.

142. There is no individual who claims to have been threatened by the Plaintiff or received threatening communications from the Plaintiff.

143. Plaintiff Khan suffered emotional distress as a result of this illegal seizure, and the compensatory, general, and punitive damages are stated in the relief sought below.

## Count 3

### Fourth Amendment: Plaintiff's Rights Against Unreasonable Searches and Due Process of Law Violated

144. Plaintiff Khan hereby adopts and incorporates all preceding paragraphs of this Complaint as if set forth herein again in full.

145. The actions of Defendants James Brien Comey, Robert Mueller, Loretta Lynch, Eric Holder, Zachary T. Fardon, Kelly Guzman, Thomas E. Brandon, Timothy Walther, Michael T. Mason, Jeffrey Cole, Timothy Walther, Curtis Gonzales, Ranjit Takhar, Atsatsang Tenzin, Jody Stanley, Michael Vahidtari, Michele L. Callighan, Thomas Wilson, Patrick O'Neil Sergeant Murakami, and Detective Delelio, violated the Plaintiff's Due Process rights as secured by the Fourth Amendment of the United States Constitution.

146. The Defendants named in this count began an invasive criminal investigation against the Plaintiff using illegal tactics, without probable cause or reasonable suspicion of wrongdoing.

147. The warrantless seizure of Plaintiff Khan's Facebook content violated the Plaintiff's reasonable expectation of privacy and his right to be left alone.

148. The Defendants arrested and/or participated in the warrantless arrest of the Plaintiff.

149. The Defendants illegally incarceration the Plaintiff without probable cause for six months.

28

150. The Defendants formulated and implemented illegal and unconstitutional guidelines and policies which were the proximate cause for the Plaintiff's civil rights violations.

151. The Plaintiff suffered extreme emotional distress and irreparable financial harm due to the Defendants illegal actions.

152. The compensatory, general, and punitive damages arising from these actionable events are included in the relief sought below.

## Count 4

## Fifth Amendment: Plaintiff Khan Deprived of His Liberty and Property Without Due Process of Law

153. Plaintiff Khan hereby adopts and incorporates all preceding paragraphs of this Complaint as if set forth herein again in full.

154. The actions of Defendants James Brien Comey, Robert Mueller, Loretta Lynch, Eric Holder, Zachary T. Fardon, Kelly Guzman, Thomas E. Brandon, Timothy Walther, Michael T. Mason, Jeffrey Cole, Timothy Walther, Curtis Gonzales, Ranjit Takhar, Atsatsang Tenzin, Jody Stanley, Michael Vahidtari, Michele L. Callighan, Thomas Wilson, Patrick O'Neil Sergeant Murakami, and Detective Delelio, violated the Plaintiff's Fifth Amendment rights by depriving him of his liberty and property without Due Process of law.

155. The Defendants participated in the Plaintiff's unlawful arrest, search, and seizure.

156. The Defendants formulated and implemented illegal and unconstitutional policies and guidelines which was the proximate cause for the Plaintiff's civil rights violations.

157.    The Defendants acted in violation of the limits placed on federal jurisdiction by attempting to police an intrastate affair with no monetary connection, and which did not directly or substantially impede intrastate commerce.

158.    The Plaintiff suffered extreme emotional distress and irreparable financial harm due to the Defendants illegal actions.

159.    The compensatory, general, and punitive damages arising from these actionable events are included in the relief sought below.

## Count 5

## Sixth Amendment: Plaintiff Khan's Right to Confront His Accusers Violated

160.    Plaintiff Khan hereby adopts and incorporates all preceding paragraphs of this Complaint as if set forth herein again in full.

161.    The actions of Defendants James Brien Comey, Robert Mueller, Loretta Lynch, Eric Holder, Zachary T. Fardon, Kelly Guzman, and Timothy Walther, violated the Plaintiff's Sixth Amendment right to confront his accusers and face the witnesses against him.

162.    The Defendants named in this count lost and/or destroyed the "anonymous tip" which was allegedly sent to the FBI.

163.    The Defendants willfully concealed the identity of the Plaintiff's alleged accuser.

164.    The Defendants participated in the violation of the Plaintiff's Sixth Amendment rights.

165.    The Plaintiff suffered extreme emotional distress and irreparable financial harm due to the Defendants illegal actions.

166.     The compensatory, general, and punitive damages arising from these actionable events are included in the relief sought below.

## Count 6

### Eight Amendment: Plaintiff Subjected to Cruel and Unusual Punishment

167.     Plaintiff Khan hereby adopts and incorporates all preceding paragraphs of this Complaint as if set forth herein again in full.

168.     The actions of Defendants James Brien Comey, Robert Mueller, Loretta Lynch, Eric Holder, Zachary T. Fardon, Kelly Guzman, Thomas E. Brandon, Timothy Walther, Michael T. Mason, Jeffrey Cole, Timothy Walther, Curtis Gonzales, Ranjit Takhar, Atsatsang Tenzin, Jody Stanley, Michael Vahidtari, Michele L. Callighan, Thomas Wilson, Patrick O'Neil Sergeant Murakami, and Detective Delelio subjected the Plaintiff to cruel and unusual punishment.

169.     The Plaintiff's illegal arrest resulted in his assault and battery at the hands of DuPage County police, and was followed by months of isolation, incarceration, and extreme emotional distress.

170.     The Plaintiff was kept in chains while in DuPage County, which would not have occurred were it not for the Defendants named herein.

171.     Moreover, false accusations against the Plaintiff were leaked to the media and press to further humiliate the Plaintiff for daring to exercise his Constitutional rights.

172.     The Plaintiff suffered extreme emotional distress and irreparable financial harm due to the Defendants illegal actions.

173.     The compensatory, general, and punitive damages arising from these actionable events are included in the relief sought below.

**Count 7**

**Tenth Amendment: Limits on Federal Jurisdiction Violated to Oppress the Plaintiff's Constitutional Rights**

174.     Plaintiff Khan hereby adopts and incorporates all preceding paragraphs of this Complaint as if set forth herein again in full.

175.     The actions of Defendants James Brien Comey, Robert Mueller, Loretta Lynch, Eric Holder, Zachary T. Fardon, Kelly Guzman, Thomas E. Brandon, Timothy Walther, Michael T. Mason, Jeffrey Cole, Timothy Walther, Curtis Gonzales, Ranjit Takhar, Atsatsang Tenzin, Jody Stanley, Michael Vahidtari, Michele L. Callighan, Thomas Wilson, Patrick O'Neil Sergeant Murakami, and Detective Delelio violated the Plaintiff's Tenth Amendment right to be free from an oppressive and overbearing federal government.

176.     The Plaintiff's Facebook posts did not have a monetary value, and did not directly or substantially impede the flow of interstate commerce.

177.     The Federal government violated the Commerce Clause of Article 1, Section 8, Clause 3 of the Constitution, as well as the Tenth Amendment.

178.     The oppressive weight of federal power was illegally utilized to deprive and violate the Plaintiff of his Constitutional rights.

179.     The Plaintiff suffered extreme emotional distress and irreparable financial harm due to the Defendants illegal actions.

180.     The compensatory, general, and punitive damages arising from these actionable events are included in the relief sought below.

32

## Count 8

### Fourteenth Amendment:

181.     Plaintiff Khan hereby adopts and incorporates all preceding paragraphs of this Complaint as if set forth herein again in full.

182.     The actions of Defendants James Brien Comey, Robert Mueller, Loretta Lynch, Eric Holder, Zachary T. Fardon, Kelly Guzman, Thomas E. Brandon, Timothy Walther, Timothy Walther, Curtis Gonzales, Ranjit Takhar, Atsatsang Tenzin, Jody Stanley, Michael Vahidtari, Michele L. Callighan, Thomas Wilson, Patrick O'Neil Sergeant Murakami, and Detective Delelio violated the Plaintiff's right to equal protection under the law.

183.     The Defendants acted under color of federal and state authority to illegally arrest the Plaintiff, without warrant, probable cause, or reasonable suspicion, and violated the Plaintiff's right to equal protection under the law as guaranteed by the 14th Amendment.

184.     The Plaintiff suffered extreme emotional distress and irreparable financial harm due to the Defendants illegal actions.

185.      The compensatory, general, and punitive damages arising from these actionable events are included in the relief sought below.

## Count 9

### Violation of 18 U.S.C. Section 2703 (c): Unlawful Access to Contents of Wire or Electronic Communications in Electronic Storage

186.     Plaintiff Khan hereby adopts and incorporates all preceding paragraphs of this Complaint as if set forth herein again in full.

187.     The actions of Defendants James Brien Comey, Robert Mueller, Loretta Lynch, Eric Holder, Zachary T. Fardon, Kelly Guzman, Thomas E. Brandon, Timothy Walther, Michael T. Mason, Jeffrey Cole, Timothy Walther, Curtis Gonzales, Ranjit Takhar, Atsatsang Tenzin, Jody Stanley, Michael Vahidtari, Michele L. Callighan, Thomas Wilson, Patrick O'Neil Sergeant Murakami, and Detective Delelio violated Title 18, U.S. Code Section 2703 (c), which requires that a government entity obtain a search warrant supported by probable cause to access all electronic data stored for 180 days or less.

188.     The Defendants named herein participated in the unlawful access and retrieval of the Plaintiff's stored content from his Facebook account, in violation of Section 2703 (c) of the Stored Communications Act.

## Count 10

## Violation of Title 18 U.S.C. Section 241: Conspiracy to Injure or Intimidate any Citizen for the Exercise of a Federal Right

189.     Plaintiff Khan hereby adopts and incorporates all preceding paragraphs of this Complaint as if set forth herein again in full.

190.     Defendants James Brien Comey, Robert Mueller, Loretta Lynch, Eric Holder, Zachary T. Fardon, Kelly Guzman, Thomas E. Brandon, Timothy Walther, Michael T. Mason, Jeffrey Cole, Timothy Walther, Curtis Gonzales, Ranjit Takhar, Atsatsang Tenzin, Jody Stanley, Michael Vahidtari, Michele L. Callighan, Thomas Wilson, Patrick O'Neil Sergeant Murakami, and Detective Delelio violated Title 18, U.S.C. Section 241, as they conspired to injure or intimidate the Plaintiff for the exercise of his federal rights.

191.     The Defendants participation in the false arrest and imprisonment of the Plaintiff for composing and editing rap lyrics without any warrants, probable cause, or reasonable suspicion, and in violation on the limits of federal jurisdiction.

## Count 11

### Violation of 18 U.S.C. 1621: Perjury

192.     Plaintiff Khan hereby adopts and incorporates all preceding paragraphs of this Complaint as if set forth herein again in full.

193.     Defendant James Brien, Defendant Loretta Lynch, Defendant Zachary T. Fardon, Defendant Kelly Guzman, and Defendant Timothy Walther committed perjury in violation of 18 U.S.C. Section 1621.

194.     The Defendants lied under oath and willfully mislead the Grand Jury and the Court pertaining to the existence of an "anonymous tip".

195.     The "anonymous tip" does not exist, never has, and was used as a pretense to begin an illegal investigation and prosecution against the Plaintiff to punish him for exercising his Constitutional rights.

196.     The Defendants have continued to conceal the basis of their illegal investigation and prosecution against the Plaintiff, and continued to make false and misleading accusations against the Plaintiff.

197.     Furthermore, the Defendants also lied on April 12 and 13, 2017, as they falsely claimed the existence of an anonymous tip of which there is not a shard evidence.

198.     The Defendant's also perpetuated the notion that the Plaintiff "disseminated" his intellectual property to 2 billion people through his Facebook account by the mere fact that the Plaintiff posted his rap lyrics on his own wall, which had a single inactive user:

"THE COURT: There's no private email that was sent in this case that was intercepted without a search warrant, correct? MS. Guzman: Correct. All of the information - - all of the threats that the defendant posted and the communications that he's being charged with as threatening communications were posted on his Facebook page and were viewable by any user of Facebook. *And Special Agent Walther testified that that is over two billion people that the Defendant disseminated that information to.*" (**Exhibit 4, at p. 327-328**)

199. The falsity of the statement quoted above, in its full context, couldn't be any clearer. The Defendants claim that because the Plaintiff's Facebook account *could have been* viewed by two billion Facebook users who would have to know specifically where to look, that it *was disseminated* by "over two billion people".

200. The Defendants have continued to perjure away during just about every appearance they have made in Court, playing fast and loose with the facts of the case; and they have done so knowing full-well that their statements are materially false and misleading.

201. In particular, the lies and deceit have been particularly outrageous from Defendant Kelly Guzman, Assistant Attorney of the United States.

202. Defendant Guzman has acted with a sense of impunity from the consequences of her actions, in complete disregard of her ethical, moral, and legal obligations.

203. The Defendants have also lied about the existence of the so-called "leads" which they have never produced as evidence before any court, and continue to falsely maintain that these "leads" are "irrelevant" to the case.

204.    The illegal investigation and prosecution of the Plaintiff is entirely predicated on these non-existent leads and imaginary "anonymous tips" which no individual, including the Defendants themselves, have ever inspected.

## Count 12

### Violation of 18 U.S.C 1622: Suborned Perjury

205.    Plaintiff Khan hereby adopts and incorporates all preceding paragraphs of this Complaint as if set forth herein again in full.

206.    Defendant Kelly Guzman suborned perjury from Defendant Timothy Walther during his Grand Jury testimony, including Defendant Walther's fabrication of nonexistent "leads" and "anonymous tips".

207.    Defendant Kelly's subornation of perjury can be glimpsed by the following whimsical transaction during the Grand Jury proceedings, during which Defendant Kelly deceitfully attempts to correct Defendant Timothy Walther's perjured assertion that he had testified to every fact known to him, which he had knowingly failed to do but had mistakenly claimed that he had:

> "Q. Have you testified to every single fact you know about this case?
>
> A. Yes.
>
> Q. *Well, have you – have you given me everything that you know or just answered my questions?*
>
> A. Just answered your questions here, but, no.
>
> Q. So *obviously* if I asked you more questions you'd be able to give me more information?
>
> A. Yes.
>
> MS. GUZMAN: Does the Grand Jury have any questions for Agent Walther?" (**Exhibit 6, at p. 15**)

37

208.    The "every single fact" Ms. Guzman dismissively referred to in her first question included material facts to the indictment, including the fact that there were no recipients of the Plaintiff's rap lyrics; there were no individuals claiming to have been threatened by the Plaintiff; there were no individuals for which the government has provided any evidence whatsoever who claim to have even seen the Facebook posts independent of the FBI showing it to them.

a.  Title 18 U.S.C. Section 875 (c) requires at the minimum the transmission of a communication which is delivered to another individual, who feels threatened or intimidated as a result of that communication.

b.  Without any known recipient of the alleged threat, an element of the offense has not been met.

209.    Moreover, the "every single fact" Ms. Guzman dismissively referred to, as if Defendant Walther had out of an abundance of good will simply forgotten to mention a mere trifling of a matter, included the Plaintiff's warrantless arrest under color of federal authority; the non-existence of an anonymous tipster; and the fact that the government had violated the federal Stored Communications Act, 18 U.S.C. Section 2703 (c), by seizing the Plaintiff's stored content without a warrant supported by probable cause.

210.    The investigation and prosecution of the Plaintiff has been arbitrary and capricious from the start, in which Defendant Kelly Guzman has been criminally complicit in the civil rights violations of the Plaintiff.

## Count 13

### Violation of 18 U.S.C. 1623: False Declarations before Grand Jury or Court

211.    Plaintiff Khan hereby adopts and incorporates all preceding paragraphs of this Complaint as if set forth herein again in full.

212.    Defendant James Brien, Defendant Loretta Lynch, Defendant Zachary T. Fardon, Defendant Kelly Guzman, and Defendant Timothy Walther made false declarations before the Grand Jury and the Court, and participated in the sham prosecution against the Plaintiff.

## Count 14

### Violation of 18 U.S.C. Section 1001: Statements or Entries Generally

213.    Plaintiff Khan hereby adopts and incorporates all preceding paragraphs of this Complaint as if set forth herein again in full.

214.    Defendant James Brien, Defendant Loretta Lynch, Defendant Zachary T. Fardon, Defendant Kelly Guzman, and Defendant Timothy Walther made materially false, fictitious, and fraudulent representations against the Plaintiff.

215.    The Defendants actions violated 18 U.S.C. Section 1001.

## Count 15

### Violation of 18 U.S.C. Section 1519: Destruction, Alteration, or Falsification of Records

216.    Plaintiff Khan hereby adopts and incorporates all preceding paragraphs of this Complaint as if set forth herein again in full.

217.    Defendant James Brien, Defendant Loretta Lynch, Defendant Zachary T. Fardon, Defendant Kelly Guzman, and Defendant Timothy Walther, in the event that there was

either a "lead" or "anonymous tip" at some point in time, with some sort of information material to the case but is now lost and/or destroyed, the Defendants named in this count violated Title 18 U.S.C. Section 1519.

218.     In the event that said "leads" and "anonymous tip" did not exist, then the Defendants named in this count violated 18 U.S.C. Section 1519 through the falsifications of court documents with the intent to impede and obstruct the due administration of justice.

## Count 16

## Violation of 44 U.S.C. Section 3106: Unlawful Removal, Destruction of Records

219.     Plaintiff Khan hereby adopts and incorporates all preceding paragraphs of this Complaint as if set forth herein again in full.

220.     Defendant James Brien, Defendant Loretta Lynch, Defendant Zachary T. Fardon, Defendant Kelly Guzman, and Defendant Timothy Walther unlawfully removed and/or destroyed records mentioned in the preceding paragraphs in violation of 44 U.S.C. Section 3106.

## Count 17

## Violation of 18 U.S.C. 371: Conspiracy to Commit Offense or to Defraud the United States

221.     Plaintiff Khan hereby adopts and incorporates all preceding paragraphs of this Complaint as if set forth herein again in full.

222.     Defendants James Brien Comey, Loretta Lynch, Eric Holder, Zachary T. Fardon, Kelly Guzman, Thomas E. Brandon, Timothy Walther, Michael T. Mason, Jeffrey Cole, Timothy Walther, Curtis Gonzales, Ranjit Takhar, Atsatsang Tenzin, Jody Stanley,

Michael Vahidtari, Michele L. Callighan, Thomas Wilson, Patrick O'Neil, Sergeant Murakami, and Detective Delelio conspired to commit the offenses named in the preceding paragraphs, and defrauded the United States government through the sham prosecution of Plaintiff Khan.

## Count 18

### Violation of 18 U.S.C. 373: Solicitation to Commit a Crime of Violence

223.    Plaintiff Khan hereby adopts and incorporates all preceding paragraphs of this Complaint as if set forth herein again in full.

224.    Defendants James Brien Comey, Loretta Lynch, Eric Holder, Zachary T. Fardon, Kelly Guzman, Thomas E. Brandon, Timothy Walther, Michael T. Mason, Jeffrey Cole, Timothy Walther, Curtis Gonzales, Ranjit Takhar, Atsatsang Tenzin, Jody Stanley, Michael Vahidtari, Michele L. Callighan, and Thomas Wilson, acting under color of federal authority, solicited the use of physical force upon the Plaintiff and his property by Defendant Patrick O' Neil.

225.    Plaintiff Khan was illegally arrested and his vehicle impounded by Defendant Patrick O' Neil, who approached the Plaintiff wearing a bulletproof vest and brandishing a pistol in plain-view, with the implied threat of deadly force.

226.    The Defendants named in this count solicited Defendant Patrick O' Neil's actions, which placed Plaintiff Khan in fear of imminent bodily harm and risk of serious injury or death.

227.    Moreover, the Defendants conspired to keep the Plaintiff illegally incarcerated in state and federal facilities, where the Plaintiff was held under the threat of physical force.

228.    The Defendants named herein violated 18 U.S.C. Section 373.

41

## Count 19

### Violation of 18 U.S.C. 1512 (c)(1)(2): Tampering with a Witness, Victim, or an Informant

229.     Plaintiff Khan hereby adopts and incorporates all preceding paragraphs of this Complaint as if set forth herein again in full.

230.     Defendants James Brien Comey, Loretta Lynch, Eric Holder, Zachary T. Fardon, Kelly Guzman, Thomas E. Brandon, Timothy Walther, Michael T. Mason, Jeffrey Cole, Timothy Walther, Curtis Gonzales, Ranjit Takhar, Atsatsang Tenzin, Jody Stanley, Michael Vahidtari, Michele L. Callighan, Thomas Wilson, Patrick O'Neil, Sergeant Murakami, and Detective Delelio corruptly influenced and participated in the corrupt initiation of official proceedings against the Plaintiff.

231.     Certain Defendants named in this count also corruptly altered, destroyed, or concealed records or documents with the intent to impair the availability of the material for use in official proceedings.

## Count 20

### Violation of 18 U.S.C. Section 1503: Influencing or Injuring Officer or Juror Generally

232.     Plaintiff Khan hereby adopts and incorporates all preceding paragraphs of this Complaint as if set forth herein again in full.

233.     Defendants James Brien Comey, Loretta Lynch, Eric Holder, Zachary T. Fardon, Kelly Guzman, Thomas E. Brandon, Timothy Walther, Timothy Walther, Curtis Gonzales, Ranjit Takhar, Atsatsang Tenzin, Jody Stanley, Michael Vahidtari, Michele L. Callighan, Thomas Wilson, Patrick O'Neil, Sergeant Murakami, and Detective Delelio corruptly influenced, obstructed, and impeded, and participated in the corrupt influence

and obstruction of Grand Jurors, Magistrates, and Judges, and endeavored thereby to influence, obstruct, and impede the due administration of justice.

234.     The Defendants stand in violation of 18 U.S.C. Section 1503.

## Count 21

### Violation of 18 U.S.C. Section 3142: Release of a Defendant Pending Trial

235.     Plaintiff Khan hereby adopts and incorporates all preceding paragraphs of this Complaint as if set forth herein again in full.

236.     Defendant James Brien Comey, Defendant Loretta Lynch, Defendant Zachary T. Fardon, Defendant Kelly Guzman, and Defendant Jeffrey Cole illegally conspired to keep the Plaintiff detained in a federal facility, knowing that the Plaintiff was not a flight risk or a danger to the community, with the intent of punishing the Plaintiff for exercising his Constitutional rights.

237.     Furthermore, the Plaintiff did not have a history of crime or violence, had not threatened any individual, and had not committed any crime or occasioned any offense or wrongdoing against any individual.

238.     By keeping Plaintiff Khan illegally detained, contrary to the recommendations of pretrial services, and out of spite and filled with malicious intent, the Defendants had sought to place the Plaintiff and his family in extreme emotional distress and to inflict the maximum financial harm possible.

239.     Defendant Jeffrey Cole's actions under color of federal authority were particularly corrupt.

240.     Defendant Cole acted in in clear violation of the limits on federal jurisdiction, and his actions in particular are deserving of opprobrium and official condemnation.

241.     An individual as biased or lacking in good judgment as Defendant Jeffrey Cole has no place in adjudicating matters of law, where he is placed in a unique position of power vested in him by society to decide upon the fate and well-being of countless individuals, many of them innocent and victims of official persecution.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Khan respectfully requests Judgment against the Defendants in the amount of $33,500,000.00, apportioned as follows:

A.  For compensatory, general, and punitive damages against Defendant James Brien Comey in the amount of $11,000,000.00;

B.  For compensatory, general, and punitive damages against Defendant Robert Mueller in the amount of $1,000,000.00;

C.  For compensatory, general, and punitive damages against Defendant Loretta Lynch in the amount of $2,500,000.00;

D.  For compensatory, general, and punitive damages against Defendant Eric Holder in the amount of $1,000,000.00;

E.  For compensatory, general, and punitive damages against Defendant Zachary T. Fardon in the amount of $1,500,000.00;

F.  For compensatory, general, and punitive damages against Defendant Kelly Guzman in the amount of $2,000,000.00;

G.  For compensatory, general, and punitive damages against Defendant Thomas E. Brandon in the amount of $500,000.00;

H.  For compensatory, general, and punitive damages against Defendant Michael T. Mason in the amount of $3,000,000.00;

44

I. For compensatory, general, and punitive damages against Defendant Jeffrey Cole in the amount of $5,000,000.00;

J. For compensatory, general, and punitive damages against Defendant Timothy Walther in the amount of $2,000,000.00;

K. For compensatory, general, and punitive damages against Defendant Ranjit Takhar in the amount of $1,500,000.00;

L. For compensatory, general, and punitive damages against Defendant Curtis Gonzales, Defendant Atsatsang Tenzin, Defendant Jodey Stanley, Defendant Michael Vahidtari, and Defendant Michele L. Callighan in the amount of $1,000,000.00 combined;

M. For compensatory, general, and punitive damages against Defendant Thomas Wilson in the amount of $750,000.00;

N. For compensatory, general, and punitive damages against Defendant Patrick O' Neil, Defendant Murakami, and Defendant Delelio in the amount of $750,000.00 combined;

O. And declare the actions of the Defendants in violation of the statutes and amendments cited in the 21 counts named herein.

Respectfully submitted,

MOHAMMAD W. KHAN